UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LAMAR PRESSLEY, Booking #24711109,<br><br>　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>SAN DIEGO EMT STAFF, SAN DIEGO CENTAL JAIL, VISTA DETENTION FACILITY, SAN DIEGO SHERIFF, VISTA DETENTION DEPUTY, CENTRAL JAIL DEPUTIES,<br><br>　　　　　　　　　　Defendants. | Case No.: 24-CV-1940 JLS (MMP)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO PROCEED *IN FORMA PAUPERIS*; AND**<br><br>**(2) DISMISSING COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1)**<br><br>(ECF Nos. 1, 5, 8, 9) |

　　　On October 18, 2024, Plaintiff Michael Lamar Pressley ("Plaintiff" or "Pressley"), a detainee proceeding *pro se*, filed a civil rights action pursuant to 42 U.S.C. § 1983, along with a Motion to Proceed *in Forma Pauperis* ("IFP"). ECF Nos. 1, 2. In his Complaint, Pressley alleged Defendants violated his constitutional rights by using excessive force against him on three different occasions. *See generally* ECF No. 1 ("Compl."). On December 18, 2024, the Court denied Plaintiff's IFP Motion and dismissed the action without prejudice because Plaintiff failed provide a copy of his trust account statement, as

1  required under 28 U.S.C. § 1915(a)(2).  *See* ECF No. 4.  The Court noted that to have his
2  case reopened, Pressley must file a properly supported IFP motion within 45 days.  *Id.*

3  On February 4, 2025, Pressley filed another IFP Motion and a Motion for an
4  Extension of Time to obtain a copy of his prison trust certificate.  ECF Nos. 5, 6.  The
5  Court granted Pressley's request for an extension of time, ECF No. 7, and on February 13,
6  2025, Plaintiff filed a Motion to Proceed IFP that includes a prison trust certificate.  *See*
7  ECF No. 8.  Plaintiff filed another IFP Motion on March 26, 2025.  ECF No. 9.  For the
8  reasons discussed below, the Court grants Plaintiff's IFP Motion and dismisses the
9  Complaint without prejudice for failure to state a claim.

## MOTION TO PROCEED IFP

11  All parties instituting any civil action, suit, or proceeding in a district court of the
12  United States, except an application for writ of habeas corpus, must pay a filing fee of
13  $405.[1]  *See* 28 U.S.C. § 1914(a).  A party may initiate a civil action without prepaying the
14  required filing fee if the Court grants leave to proceed IFP based on indigency.  28 U.S.C.
15  § 1915(a); *Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).

16  To proceed IFP, plaintiffs must establish their inability to pay by filing an affidavit
17  regarding their income and assets.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234
18  (9th Cir. 2015).  Prisoners must also submit a "certified copy of the [prisoner's] trust fund
19  account statement (or institutional equivalent) for . . . the 6-month period immediately
20  preceding the filing of the complaint."  28 U.S.C. § 1915(a)(2).  From the certified trust
21  account statement, the Court assesses an initial payment of 20% of (a) the average monthly
22  deposits in the account for the past six months, or (b) the average monthly balance in the
23  account for the past six months, whichever is greater, unless the prisoner has no assets.  *See*
24  28 U.S.C. §§ 1915(b)(1) & (4).  Prisoners who proceed IFP must repay the entire fee in

---

[1] Civil litigants must pay an administrative fee of $55 in addition to the $350 filing fee.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Dec. 1, 2023)).  The additional $55 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

installments regardless of whether their action is ultimately dismissed. 28 U.S.C. § 1915(b)(2); *Bruce v. Samuels*, 577 U.S. 82, 84 (2016).

There are currently three pending IFP Motions in this case. *See* ECF Nos. 5, 8, 9. In support of his February 13, 2025 IFP Motion, Pressley provided a certified copy of his prison certificate. ECF No. 8 at 6. During the six months prior to filing suit, Pressley had an average monthly balance of $0.01 and average monthly deposits of $191.50. On February 3, 2025, Plaintiff had an available account balance of $0.06. *Id*. The Court therefore **GRANTS** Plaintiff's February 13, 2025 IFP Motion (ECF No. 8) and assesses no initial partial filing fee. *See Taylor v. Delatoore*, 281 F.3d 844, 850 (9th Cir. 2002) (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered"). Plaintiff remains obligated to pay the $350 balance of the filing fee required by 28 U.S.C. § 1914 pursuant to the installment payment provisions of 28 U.S.C. § 1915(b)(1). Plaintiff's February 4, 2025 and March 26, 2025 IFP Motions (ECF Nos. 5, 9) are **DENIED** as **MOOT**.

## SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)

### I. Legal Standard

Pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), the Court must screen a prisoner's IFP complaint and *sua sponte* dismiss it to the extent that it is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010). "The standard for determining whether Plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). While detailed factual allegations are not required, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim. *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II.     Plaintiff's Allegations

In his Complaint, Pressley alleges that on March 15, 2024, he was arrested by San Diego County Sheriff deputies. Compl. at 3. At some point, deputies called for medical assistance. *Id.* Emergency medical technician ("EMT") staff arrived, and Plaintiff was placed on a gurney and transported to an unspecified hospital. While en route to the hospital, one EMT called Plaintiff a "low life." *Id.* Plaintiff responded by calling the EMT a "piece of shit." *Id.* After going "back and forth" with verbal insults, the EMT "punched [Pressley] in the stomach, then punched [him] in the right side of [his] neck." *Id.* When Pressley tried to get up, the EMT punched him in the nose, and then again in the eye. The blows caused a cut near Pressley's eye which ultimately required "8–10 stitches." *Id.*

When Pressley finally arrived at San Diego Central Jail, he requested an "inmate grievance" form but deputies failed to give him one. *Id.* at 4. He also submitted requests for a "1983 pack" so that he could file a complaint, but deputies failed to "turn in" the requests. *Id.*

On April 17, 2024, Pressley was escorted to the hospital for an unspecified reason. *Id.* at 5. Deputies used six pairs of handcuffs to restrain Pressley. *Id.* at 5. The handcuffs were too tight and cut off Plaintiff's circulation, "making [his] wrist swell up." *Id.* Plaintiff asked deputies to loosen the handcuffs, but they just laughed. *Id.*

At some point, Pressley went to cough "in the opposite direction" of the deputies. As he did so, one of the deputies "jumped up" and "pulled out a spit mask," which he

attempted to place over Pressley's face. *Id.* Pressley was taken by surprise, shook his head, and stated, "No." *Id.* The deputy then punched Pressley in his upper body and began choking him while he remained handcuffed to the hospital bed. *Id.* At some point, another deputy came to the bed, pulled out his taser, placed it directly on Pressley's bare leg and pulled the trigger. *Id.* Plaintiff states he was tased at least two times. *Id.* at 6. He felt like he was "being shocked to death." *Id.*

After tazing Pressley, deputies mocked him and called him a "lil bitch." *Id.* Pressley asked deputies several times for a grievance form so that he could document the incident but the deputes refused to give him one. *Id.*

On June 30, 2024, Pressley was at Vista Detention Facility. *Id.* at 7. When he asked Deputy Pasqual to sign his "inmate grievance," Pasqual took the form and read it out loud. Pasqual then told Plaintiff's cellmates that Pressley was a "snitch, and they should beat his ass." *Id.* At some point thereafter, Plaintiff was assaulted by inmates. He had to be transported to the hospital where he was treated for three fractured ribs. *Id.*

Plaintiff returned to Vista Detention Facility later that day. *Id.* As a deputy was escorting Pressley, who was in a wheelchair, to the medical unit where Pressley was then housed, Pressley's foot began "dragging." *Id.* When Plaintiff tried to stand in order to "straighten up [his] foot," the deputy "body slam[med]" him. *Id.* The deputy pressed against Plaintiff's broken ribs and placed his knee on Plaintiff's back to hold him down. Eventually, four deputies "carried" Plaintiff "by his arms and legs" to a cell, threw him in it, and left. *Id.* at 8.

Shortly thereafter, Pressley began coughing up "dark colored blood" and felt a "pop" in his ribs. *Id.* Eventually a nurse arrived who told the deputies to get Pressley out of the cell. *Id.* Pressley told the nurse he was having difficulty breathing and when he "spit out more blood," the nurse told deputies to call 911. *Id.* Pressley was transported to Tri-City Hospital, where x-rays revealed he had a punctured lung and internal bleeding. *Id.* He was then "rushed" to University of San Diego Hospital where he was admitted to the "ICU Trauma Center." *Id.*

### III. Discussion

In his Complaint, Pressley alleges three instances of excessive force, occurring on March 15, 2024, April 17, 2024, and June 30, 2024. *Id.* at 3–9. Pressley names six Defendants, all in their official capacities only: San Diego EMT Staff, San Diego Central Jail, Vista Detention Facility, San Diego Sheriff, Vista Detention Deputy, and Central Jail Deputies. *Id.* at 1–2. He seeks $1,000,000 in compensatory and punitive damages. *Id.* at 11.

#### A. San Diego Sheriff

First, Pressley fails to state a claim against the San Diego Sheriff in his official capacity. Because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," a suit against a county official in his or her official capacity amounts to a suit against the county itself. *Brandon v. Holt*, 469 U.S. 464, 471 (1985) (internal citations omitted). Thus, Pressley's official-capacity claim against the San Diego Sheriff "is, in all respects other than name, to be treated as a suit against the entity." *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978); *Brandon v. Holt*, 469 U.S. 464, 472 (1985) (concluding that actions of department head in his official capacity are akin to actions of municipality itself).

Public entities cannot be vicariously liable for the conduct of their employees under § 1983. *Monell*, 426 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."); *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011). Instead, plaintiffs must establish that the "local government had a deliberate policy, custom, or practice that was the 'moving force' behind the constitutional violation [they] suffered." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (quoting *Monell*, 436 U.S. at 694–95). At the pleading stage, a plaintiff pursuing a claim under *Monell* must allege "underlying facts" that plausibly suggest that the government defendants have a policy or custom that caused the constitutional wrong. *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216

(9th Cir. 2011)).

Here, Plaintiff's Complaint is devoid of any factual allegations that would establish his injury was caused by individuals whose conduct conformed to an official county policy, custom or practice. Therefore, Pressley has failed to state a *Monell* claim against the San Diego Sheriff. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### B.     *County Entity Defendants*

Pressley also fails to state a claim against San Diego Central Jail, Vista Detention Facility, and "San Diego EMT Staff"[2] in their official capacities. Generally, an agency or department of a municipal entity is not a proper defendant under § 1983. *Vance v. County of Santa Clara*, 928 F. Supp. 993, 996 (N.D. Cal. 1996); *see also Payne v. County of Calaveras*, No. 1:17-cv-00906-DAD-SKO, 2018 WL 6593347, at *2 (E.D. Cal. Dec. 14, 2018) ("California district courts considering the issue have determined that a jail is not a suable entity."). Rather, when a claim involves a county or city entity or sub-agency, the county or city itself is generally the proper defendant. *See Vance*, 928 F. Supp. at 996. And here, as discussed above, Plaintiff has failed to allege any San Diego County policy or custom caused his constitutional rights to be violated. *See Monell*, 426 U.S. at 694–95. Thus, Pressley has failed to state a claim against San Diego Central Jail, the Vista Detention Facility, or "San Diego EMT Staff." *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### C.     *Unnamed Defendants*

Pressley has also named "Vista Detention Deputy" and "Central Jail Deputies" as Defendants, in their official capacities. Compl. at 2. As discussed above, a suit against a county official in their official capacity is treated as a suit against the county itself. *See Monell*, 436 U.S. at 690, n.55; *see Vance*, 928 F. Supp. at 996. Thus, Pressley fails to state a claim against these unnamed deputies for the same reasons discussed above.

---

[2] While not entirely clear from the allegations in the Complaint, the Court presumes the emergency medical transport staff who responded after Plaintiff's arrest were County employees.

Furthermore, the Court notes that while the Federal Rules of Civil Procedure neither authorize nor prohibit the use of fictitious parties, Rule 10 requires a plaintiff to include the names of all parties in his complaint. *See* Fed. R. Civ. P. 10(a). Courts especially disfavor "Doe" pleading in an IFP case because, in the event the plaintiff's complaint alleges a plausible claim for relief, it is effectively impossible for the United States Marshal or deputy marshal to fulfill his or her duty to serve an unnamed defendant. *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d); *Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (reasoning that in order to properly effect service under Rule 4 in an IFP case, the plaintiff is required to "furnish the information necessary to identify the defendant"); *Finefeuiaki v. Maui Cmty. Corr. Ctr. Staff & Affiliates*, No. 18-00249 DKW-KJM, 2018 WL 3580764, at *6 (D. Haw. July 25, 2018) (noting that "[a]s a practical matter, the United States Marshal cannot serve a summons and complaint on an anonymous defendant"). Nonetheless, "[a] plaintiff may refer to unknown defendants as Defendant John Doe 1, John Doe 2, John Doe 3, and so on, but he must allege specific facts showing how each particular doe defendant violated his rights."[3] *Cuda v. Emps./Contractors/Agents at or OCCC*, No. 19-00084 DKW-KJM, 2019 WL 2062945, at *3–4 (D. Haw. May 9, 2019).

In sum, as currently pleaded, Plaintiff has failed to state an excessive force claim against "Vista Detention Deputy" or "Central Jail Deputies." *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Iqbal*, 556 U.S. at 678.

### IV.  Leave to Amend

Given Plaintiff's *pro se* status, the Court **GRANTS** leave to amend his Complaint. *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a *pro se* complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint

---

[3] A plaintiff may also seek discovery to obtain the names of the Does and later amend his pleading in order to substitute the true names of those defendants, unless it is clear that discovery will not uncover their identities, or that his complaint is subject to dismissal on other grounds. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999) (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).

could not be cured by amendment.'" (quoting *Akhtar v Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012))).

In deciding whether to file an amended complaint, Plaintiff should consider the relevant legal standards governing his potential claims for relief, which the Court sets forth below. Plaintiff alleges three instances of excessive force. The first occurred on the day of Pressley's arrest, *see* Compl. at 3, while the other two appear to have occurred while Pressley was a pretrial detainee, *id.* at 5, 7.

The Fourth Amendment's "objective reasonableness" standard governs claims of excessive force during an arrest, investigatory stop, or other seizure. *Graham v. Connor*, 490 U.S. 386, 388 (1989). If an individual is arrested without a warrant, the Fourth Amendment applies "up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir. 1996). Objective reasonableness is determined "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397.

The Due Process Clause of the Fourteenth Amendment governs excessive force claims brought by pre-trial detainees.[4] *Id.* at 395 n.10; *Bell v. Wolfish*, 441 U.S. 520, 535–39 (1979). The due process standard is also an objective one, by which "a pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396 (2015). Although not exclusive, the Supreme Court has identified several factors that a court may consider in determining the reasonableness or unreasonableness of the force used: (1) "the relationship between the need for the use of force and the amount of force used"; (2) "the extent of the plaintiff's injury"; (3) "any effort made by the officer to temper or to limit the

---

[4] After conviction, the Eighth Amendment protects prisoners from the use of excessive force. *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

amount of force"; (4) "the severity of the security problem at issue"; (5) "the threat reasonably perceived by the officer"; and (6) "whether the plaintiff was actively resisting." *Id*. at 397.

## CONCLUSION

Accordingly, the Court **ORDERS** as follows:

1. **GRANTS** Plaintiff's February 13, 2025 Motion to Proceed IFP (ECF No. 8) and **DENIES** Plaintiff's other pending IFP Motions (ECF Nos. 5, 9) as **MOOT**.

2. **ORDERS** the Secretary of the CDCR, or his designee, to collect the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). All payments must clearly identify the name and case number assigned to this action.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Jeff Macomber, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001, by U.S. Mail, or by forwarding an electronic copy to trusthelpdesk@cdcr.ca.gov.

4. **DISMISSES** the Complaint in its entirety for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1).

5. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint that cures the deficiencies of pleading noted in this Order. Plaintiff's First Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend that are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief

can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated:  June 9, 2025

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge